IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEROME DAVID MITCHELL, | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. WDQ-14-1781 |
| SERGEANT WILLIAMS, et al., | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM

Pending is a Motion to Dismiss filed by Wexford Health Sources, Inc. (ECF 17)[1] as well as a Motion to Dismiss, or in the alternative, Motion for Summary Judgment filed by Roxbury Correctional Institution (RCI), Captain Harry Baker, Sgt. Travis Williams, C.O. II Michael Lohr, C.O. II Justin Pence, C.O. II Darnell Scott, C.O. II Kenneth L. Shanholtz, III, and C. O. II Ryan L. Thomas (the State Defendants).[2] ECF 32.[3] The Plaintiff has responded and Wexford Health Sources, Inc. has replied. ECF 22, 26 & 34. Upon review of the papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, Wexford Health Sources, Inc.'s dispositive motion will be granted and the State Defendants' dispositive motion will be granted in part and denied in part.

---

[1] Although counsel for Wexford Health Sources Inc., also entered their appearance on behalf of Defendant Nurse Cindy (*see* ECF 8 & 9) no response to the Complaint has been filed on behalf of that Defendant. Counsel later advised that Nurse Cindy had not been identified. ECF 24. Plaintiff's complaint against Nurse Cindy shall be dismissed.

Defendant Rollins has also not been properly served with the Complaint. Counsel for State Defendants has provided Rollins' last known home address under seal. ECF 44. The Marshal shall be directed to take all necessary steps to effect service on Rollins.

[2] The Clerk shall amend the docket to reflect the correct spelling of Defendants' names. The Plaintiff's Complaint against "Control Booth Officer'" and Unknown Officers I & II shall be dismissed without prejudice.

[3] Defendants Shanholtz and Thomas's Motion to Join State Defendants' dispositive motion (ECF 46) shall be granted.

Background

This case was instituted upon receipt of a civil rights Complaint filed by Plaintiff Jerome
Mitchell, an inmate then held at the North Branch Correctional Institution ("NBCI").  ECF 1. The
Plaintiff claims that on October 4, 2014, while housed at the Roxbury Correctional Institution
("RCI"), he was advised by Williams that another inmate would be moved into his cell.  ECF 1, p.
6.

Williams directed the Plaintiff to "cuff up" so that the cell door could be opened[4] and the
Plaintiff complied. ECF 1, p. 8.  The cell door was opened by Control Booth Officer  Thomas,
(ECF 37,  p. 3), the Plaintiff's cellmate entered the cell (ECF 1, p. 8), the cell door was closed,
and the cellmate's handcuffs were removed through the security slot. *Id.*

As the Plaintiff placed his hands in the slot to have his restraints removed, he reminded
Williams, Lohr, Pence and other unidentified officers that he was still awaiting information
regarding the status of his confiscated personal property.  *Id.*   Lohr took offense to his questions
and began to insult and verbally threaten him.  *Id.*, p. 8.  Plaintiff advised the correctional officers
that he had less than a year left on his sentence. Lohr responded by stating his home address and
inviting the Plaintiff to his home, threatening to have his dogs "eat Plaintiff alive" and threatening
to shoot him. *Id.*

Williams then advised the Plaintiff he was being moved to "C-Tier."  Instead of ordering
the Plaintiff to be handcuffed, he called via his radio to have the door opened.  While the door
was opening, Williams reached into the cell, grabbed the Plaintiff by his arm, yanked him out of
the cell, and ordered the other officers to "take him down!!!" *Id.*, pp. 8-9. Plaintiff, fearing assault,
lay down on the floor. Although the Plaintiff voluntarily placed his hands behind his back in order

---

[4] The Plaintiff states that pursuant to Division of Correction policy disciplinary segregation inmates, like himself, are
to be handcuffed before their cell doors are opened and whenever escorted from their cell. *Id.*

to be handcuffed, the officers bent and twisted his hands and fingers. ECF 1, p. 10. While lying on the floor, offering no resistance, the Plaintiff was repeatedly kicked, punched, and kneed in the head, ribs, back and lower body by Williams, Lohr, Pence and unknown officers. *Id*. p. 9. In his Amended Complaint, the Plaintiff indicates, based upon his review of the "Post Assignment Worksheet," that Officers Rollins and Shanholtz were "involved with Sgt. Williams, CO II Pence and CO II Lore...forcefully and repeatedly kick[ing], punch[ing] and knee[ing] plaintiff." ECF 37, p. 2.

The Plaintiff states that after he was handcuffed the assault continued and he was choked almost until unconsciousness then lifted off the ground. Once he was on his feet Williams ordered the other officers to "keep his head down!" *Id*. The Plaintiff's head was pushed toward the ground using a choke hold and his arms were extended skywards. In this posture the Plaintiff was marched to C Wing, all the while being "[p]ummeled and disparaged." *Id*. The Plaintiff was shoved into a cell while handcuffed and the door closed. *Id*., p. 11.

Despite excruciating physical and psychological pain, the Plaintiff indicates he managed to bring his hands forward. The Plaintiff states he was experiencing loss of sensation and bleeding in both wrists and sought relief by running cold water over his wrists at the sink and submerging his wrists in cold water. *Id*. p. 11.

Approximately 45 minutes later, Williams, Lohr and Pence came to the Plaintiff's cell, accompanied by Scott. Plaintiff was ordered to the door to have his handcuffs removed so that another inmate could enter the cell. *Id*. p. 11. While the Plaintiff's handcuffs were being removed he advised Scott that he needed medical attention. Scott did not respond, but an unknown officer said "yeah, right." *Id*.

Approximately one hour later Pence brought the Plaintiff's personal belongings to his new cell. He claims that not all of his property was returned to him. *Id.*, p. 12. The Plaintiff advised Pence he needed medical care but was ignored. *Id.*, p. 13. The Plaintiff states that from October 4 to October 7, 2013, he advised guards on various shifts that he needed medical care due to his injuries. *Id.*

On October 6, 2013, the Plaintiff stopped Nurse Cindy as she was conducting rounds on the tier. The Plaintiff advised her of the assault, showed her his injuries, and stated that he was in severe pain and required treatment. The Plaintiff states that he handed her an official sick call slip but she walked off, failing to provide or request medical services. *Id.*, p. 13.

On October 7, 2013, the Plaintiff spoke with Defendant Baker and detailed his complaints regarding the assault, lack of medical care, and loss of property. Baker advised that there was nothing he could do about it but would relay the complaints to day shift personnel. *Id.*, p. 14.

On the morning of October 7, 2013, the Plaintiff was escorted to meet with Ms. Lynn of the psychology department regarding a note she received regarding the assault. *Id.* p. 14. After interviewing Plaintiff, Lynn advised that she would pass along his allegations. *Id,.* p. 15.

On October 7, 2013, Plaintiff was notified he was to be seen for a medical appointment. On his way to the medical unit, he met Lt. Laniford and advised him of his concerns. Laniford gave Plaintiff an inmate statement form and requested he complete it during his medical appointment. *Id.* p. 15. Photographs were taken at the medical unit and RCI's Warden and Investigative Officer, Crist, checked in on Plaintiff while he was in the medical unit. *Id.* After being treated by medical personnel, Plaintiff was interviewed by Crist. *Id.*, p. 16.

4

Standard of Review

A.     Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.     Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those

6

issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A.  Defendant Roxbury Correctional Institution

To sustain an action under 42 U.S.C. § 1983, the Plaintiff must demonstrate that: (1) he suffered a deprivation of  rights secured by the Constitution of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The Roxbury Correctional Institution is not a "person" subject to suit or liability under § 1983 and Plaintiff's Complaint against it shall be dismissed.

B.  Property Claim

The Plaintiff's claim regarding the loss or destruction of his personal property fails.  In cases of  negligent or intentional destruction of an inmate's property, sufficient due process  is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional deprivation of property by prison guard did not constitute violation of due process clause as meaningful post-deprivation remedies were available under state law); *Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981) (negligent deprivation of inmate's property does not violate the due process clause, so long as meaningful post-deprivation remedies are available), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986).  Plaintiff must pursue his property claims under Maryland's Tort Claims Act and through the Inmate Grievance Office. This right to seek damages and injunctive relief through Maryland's

courts and administrative agencies constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F.Supp. 574, 579 (D. Md. 1982). [5]

C. Medical Claim

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

The Plaintiff's claims against Wexford Health Source, Inc. lacks personal involvement in the delivery of onsite health care to Plaintiff and is insufficient to state a claim against the named Defendant. The Plaintiff has pointed to no action or inaction on the part of Wexford that resulted in a constitutional injury, and accordingly, his claims against Wexford Health Source, Inc., shall

---

[5] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

be dismissed.

Even if Plaintiff had properly identified and named "Nurse Cindy," she would be entitled to dismissal. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of a defendant or the failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an

9

official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Here the Plaintiff alleges that he advised Nurse Cindy that he needed to be seen by medical and that he handed her a sick call slip. He alleges that he was not provided medical care until the day following this encounter.[6] There is no allegation, much less evidence, that Nurse Cindy was subjectively aware of the Plaintiff's alleged need for immediate medical care, and in fact the Plaintiff's medical records show that objectively he suffered scratches and bruises-injuries which do not appear to have required emergency treatment. Moreover, there is neither allegation nor evidence that Nurse Cindy failed to turn in the Plaintiff's request for medical attention. To the contrary, it appears she did act upon his request as he was called to the medical unit the following day. As such, the Plaintiff's claim against Nurse Cindy shall be dismissed.

---

[6] In his opposition to the Medical Defendant's dispositive motion, the Plaintiff alleges for the first time that he told the nurse providing evening rounds on October 5 and 6, 2013, that he had been assaulted by staff and required medical attention. ECF 22. It is unclear form his opposition whether he spoke to Nurse Cindy or other nurses as they are not identified. In either case, the dispute of fact is not material to determination of the Plaintiff's claim, as he was provided medical care within a reasonable time and there is no evidence that treatment for the bruises and abrasions he suffered required prompt evaluation.

D. Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 34.

As a result of the Plaintiff's allegation that he was assaulted by staff, the Department of Public Safety and Correctional Services Internal Investigative Unit ("IIU") undertook an investigation. ECF 32-4. The IIU report notes that the Plaintiff alleged he was assaulted by Pence, Williams, and three unidentified officers on October 3, 2013. *Id.*, p. 8. The Plaintiff advised IIU that after inquiring about his property Williams advised the Plaintiff they were not going to deal with it and he was being transferred to C Tier. At that time the cell door was opened, Williams grabbed the Plaintiff, and he "went to the floor." The Plaintiff advised IIU that while on the floor all officers kicked and punched him, bruising his ribs and head. *Id.*, pp. 9-10. The Plaintiff's statement to the IIU investigator largely mirrors the allegations presented in his Complaint.

11

Inmate Hall, the Plaintiff's cellmate, was interviewed by IIU. Hall stated that the Plaintiff was in the cell when Hall arrived at the cell and the Plaintiff advised correctional staff that he did not want a cell partner and he was not going to "cuff up." *Id.*, p. 14. Hall states that the Plaintiff was directed to go the back of the cell and place his hands on the wall but he refused. The officers "went in and got him" and took the Plaintiff "to the floor outside of the cell." Hall offered that the Plaintiff "was bucking and resisting." *Id.* He denied seeing the officers punch or kick the Plaintiff. *Id.*

When interviewed by IIU, Pence denied any incident involving the Plaintiff and reported Hall entered the cell without incident. During his interview, Williams recalled that the Plaintiff refused to have Hall as a cellmate so Williams directed the Plaintiff to pack up his belongings as he was being moved. Williams stated that neither he nor any other officer had any physical contact with the Plaintiff, "other than a hands on escort." *Id.*, p. 16.

In support of their dispositive motion Lohr, Williams, Pence, Scott, and Baker aver that they did not threaten, harass, or assault the Plaintiff. ECF 32-5, 32-6, 32-7, 32-8, 32-9. Shanholtz and Thomas aver that they do not recall the incident. ECF 46-2, 46-3.

The Plaintiff's medical records noted his subjective complaints of pain throughout his body and numbness in his hands. Objectively, cuts on the Plaintiff's shoulder and behind his ear were observed as well as bruises on his right shoulder and left chest. *Id.,* pp. 8, 12. The Plaintiff also reported to medical on October 15, 2013, that his right hand was numb from the application of the cuffs on October 4, 2013. *Id.*, p. 12.

The Plaintiff's Complaint is verified. In support of his claim, his medical records demonstrate bruising and abrasions and his cellmate reported that the Plaintiff was taken to the floor by correctional staff. The State Defendants either do not recall any incident or maintain that

12

the Plaintiff's removal from his cell was without incident. In cases where, as here, State Defendants offer little to no justification for the alleged application of force, and provide no alternative explanation for the Plaintiff's injuries, there exists a genuine dispute of material fact regarding whether the force was applied maliciously, precluding summary judgment pursuant to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[7]

Conclusion

For the reasons stated above, the Defendant Wexford Health Sources, Inc.'s motion to dismiss will be granted. Plaintiff's Complaint against Roxbury Correctional Institution, Control Booth Officer, Unknown Officer I, Unknown Officer II and Nurse Cindy shall be dismissed. Captain Harry Baker, Sgt. Travis Williams, C.O. II Michael Lohr, C.O. II Justin Pence, C.O. II Darnell Scott, C.O. II Kenneth L. Shanholtz, III, and C. O. II Ryan L. Thomas' motion for summary judgment will be denied.

Date:   8/13/15

William D. Quarles, Jr.
United States District Judge

[7] The determination of whether the State Defendants are entitled to qualified immunity is more appropriately addressed after the facts of the case have been developed and a determination has been made as to whether the Plaintiff has suffered a violation of his constitutional rights. Accordingly, dismissal of the Plaintiff's complaint based on qualified immunity is not proper at this time.